UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LINDA L. JOHNSON,<br>      Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 2:14-CV-47-JEM |
| CAROLYN W. COLVIN, Acting<br>Commissioner of the Social Security<br>Administration,<br>      Defendant. | )<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Linda L. Johnson on February 14, 2014, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 18], filed by Plaintiff on September 8, 2014. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On December 15, 2014, the Commissioner filed a response, and on December 24, 2014, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On November 5, 2010, Plaintiff filed an application for disability insurance benefits ("DIB") and an application for Supplemental Security Income ("SSI") with the U.S. Social Security Administration ("SSA") alleging that she became disabled on August 20, 2010. Plaintiff's application was denied initially and upon reconsideration. On June 5, 2012, Administrative Law Judge ("ALJ") Mario Silva held a hearing at which Plaintiff, with an attorney, and a Vocational Expert ("VE") testified. On June 23, 2012, the ALJ issued a decision finding Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since August 20, 2010, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: rheumatoid arthritis, lumbar radiculopathy, tear of the left ankle tendon, headaches, chronic obstructive pulmonary disorder (COPD), fibromyalgia and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the ALJ found that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as the claimant is able to lift 10 pounds frequently, sit stand and/or walk for six hours in an eight hour workday, except: the claimant is able to lift up to 15 pounds occasionally, is unable to climb ladders, ropes or scaffolds, unable to crawl, may occasionally climb stairs, balance, stoop and kneel, can frequently handle and occasionally finger with the right dominant hand and must avoid moderate exposure to pulmonary irritants such as dust, fumes and gasses and hazards such as unprotected heights and dangerous moving machinery. In addition, the claimant must work at a job that is free of production rate with no tandem tasks or teamwork where one production step is dependent upon a prior step.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on December 19, 2013. *See* 20 C.F.R. § 404.981.

Under 42 U.S.C. § 405(g), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision. The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

Plaintiff was 50 years old when she applied for DIB and SSI. Plaintiff suffers from rheumatoid arthritis, lumbar radiculopathy, tear of the left ankle tendon, headaches, COPD, fibromyalgia, obesity and anxiety. MRIs of Plaintiff's lumbar spine showed disc bulges. Plaintiff also takes four Vicodin a day for her back pain and wears a prescribed back brace. Plaintiff received steroid injections for her back pain and she has received biological infusions for her arthritis. Plaintiff also had an injection for her left ankle and eventually had surgery on that ankle in August 2011. Plaintiff was diagnosed with anxiety and prescribed Xanax.

In November 2010, Plaintiff's treating physician, Tarek Kudaimi, M.D., opined that she is limited to lifting ten to fifteen pounds. In June 2012, Dr. Kudaimi noted Plaintiff had inflammation in her bilateral hands, feet and ankles, and indicated that her arthritis caused her to experience significant fatigue.

At the hearing, Plaintiff testified that she has pain all over but especially in her hands, ankles,

back, and hip. She testified that the Vicodin she takes makes her dizzy, make her unable to concentrate, and constipates her, but she takes it for the pain because nothing else helps. Plaintiff testified that she can sit from ten to fifteen minutes at a time due to hip pain and stand for ten to fifteen minutes at a time due to back pain.

The VE testified that someone with the RFC the ALJ assigned to Plaintiff would be able to perform light work with the additional limitation of lifting only up to fifteen pounds instead of twenty. The VE testified that someone with Plaintiff's RFC could work as a school bus monitor, parking lot attendant or school crossing guard.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning

of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

5

an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f); 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functioning capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [claimant's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

**A.**     **Residual Functional Capacity**

Plaintiff argues that the RFC is not based on substantial evidence. The Commissioner argues that the ALJ supported his RFC finding with substantial evidence.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material

> inconsistencies or ambiguities in the evidence in the case record were
> considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

1. *Basis in Evidence*

Plaintiff argues that the ALJ failed to provide a proper basis for the RFC. The Commissioner argues that the RFC is based on substantial evidence.

There was only one treating physician opinion regarding Plaintiff's restrictions, restricting her to lifting up to ten to fifteen pounds. The ALJ did include this limitation in Plaintiff's RFC, but it is not clear on what medical evidence the ALJ based the remainder of the RFC. The ALJ gave only "some weight" to Dr. Kudaimi's June 2012 report regarding Plaintiff's inflammation in her hands, feet and ankles and Plaintiff's significant fatigue. The ALJ does not explain why he gave limited weight to this opinion, except to say that "Dr. Kudaimi did not provide any functional limitations in his assessment." AR 20. The ALJ also gave little weight to the remainder of the opinion evidence in the record. Although the ALJ stated that he accommodated for Plaintiff's joint swelling by including "appropriate postural limitations" in the RFC he does not to cite to medical evidence in the record regarding the other limitations in the RFC, such as why Plaintiff can frequently lift ten pounds, walk six hours in an eight hour workday, and occasionally climb stairs, balance, stoop and kneel. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("[I]t is the evidentiary deficit left by the

ALJ's rejection of his reports—not the decision itself—that is troubling. The rest of the record simply does not support the parameters included in the ALJ's residual functional capacity determination, such as an ability to 'stand or walk for six hours' in a typical work day . . ."); *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("[T]he ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision."); *Barrett v. Barnhart*, 355 F.3d 1065 (7th Cir. 2004) (finding reversible error when ALJ determined that claimant could stand for two hours when there was no medical evidence to support such a conclusion). Furthermore, the ALJ found that Plaintiff's anxiety created mild limitations in concentration, persistence, and pace, and the ALJ found that with her headaches, Plaintiff had moderate limitations in concentration, persistence, and pace. No treating or examining physician opined as to any limitations in concentration, persistence an pace, and the ALJ did not explain the medical basis for these limitations.

The ALJ must build an "accurate and logical bridge from the evidence to [his] conclusion," *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.2000), and "he may not 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012). In this case, the ALJ failed to build a logical bridge between the evidence and his conclusions and impermissibly filled in the evidentiary gaps with his own medical determinations when developing Plaintiff's RFC. On remand, the ALJ is directed to identify the medical support for his conclusions about Plaintiff's abilities. The Court reminds the ALJ of his duty to fully develop the record, including recontacting physicians for clarification, such as enquiring into the limitations resulting from Plaintiff's impairments as necessary. *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004); S.S.R. 96-5p; *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Goins v. Colvin*, 764 F.3d

677, 680 (7th Cir. 2014).

2. *Combination of Impairments*

Plaintiff argues that the ALJ failed to consider Plaintiff's impairments in combination. The Commissioner argues that ALJ considered Plaintiff's impairments, separately and in combination, throughout the sequential evaluation.

"Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)). In addition, "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on his underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC." *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) (citing SSR 02-1p, 2002 WL34686281 (Sept. 12, 2002)) (other citations omitted); *see also Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability").

The ALJ noted that Plaintiff's "obesity was considered in relation to the musculoskeletal, respiratory and cardiovascular body systems." The Court is concerned with the use of this boilerplate language that quotes the SSA regulations on obesity but does not lay out any analysis in connection with any Plaintiff's actual impairments. *See* S.S.R. 02-1p, 2002 WL 34686281, at *5 ("For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments."). In addition to the severe impairments the ALJ found, Plaintiff had a non-serve impairment of anxiety. The ALJ addressed anxiety in connection Plaintiff's headaches to determine that in combination they produce moderate limitations in concentration, persistence, or pace, but aside from that it is not clear to the Court how the ALJ considered the Plaintiff's various impairments in combination, an omission that is particularly troubling when Plaintiff's obesity is a severe impairment. *See* S.S.R. 02-1p, 2002 WL 34686281, at *3 (Sept. 12, 2002) ("Obesity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea."). Ruling 02-1p provides that in evaluating obesity in assessing RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, at *6. Further, Ruling 02-1p explains that an ALJ's RFC determination must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *Id.* (citing SSR 96-8p). All of Plaintiff's impairments could be exacerbated by obesity, and yet the ALJ, without an explanation or citation to medical evidence, found that Plaintiff could walk for six hours in an eight hour workday and

frequently lift ten pounds. The Court is unable to determine whether the ALJ considered Plaintiff's impairments in combination and, if he did, how such consideration was reflected in the ALJ's RFC. Accordingly, the Court remands for the ALJ to build a logical bridge from the evidence to his conclusions in the RFC.

On remand, the ALJ is directed to consider the combination of Plaintiff's impairments, even those that are not severe in isolation, and to specifically address the impact her obesity and her mental health problems have on her ability to perform work.

**B.     Credibility**

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve []pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p require the ALJ to consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time

a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

In this case, the ALJ found Plaintiff "to be less than fully credible" because "[t]he record indicates that other than a couple of steroid injections, the claimant has managed her back pain through the use of prescription medication." AR 19. The ALJ noted Plaintiff had "not been recommended to engage in more extensive treatment, such as surgery, and has not participated in physical therapy, which suggests that her symptoms are not as severe as alleged." The ALJ also noted after her ankle surgery Plaintiff "managed her [ankle pain] symptoms through the use of prescription medication," there "is no evidence in the record indicating that the claimant uses a cane to help her walk," and "it has been noted that she has a steady gait." AR 20. With respect to her rheumatoid arthritis, the ALJ noted that Plaintiff decided to stop the biological infusions that could prevent spread of the disease, and he also wrote that the "objective evidence indicates only mild degeneration of the lumbar spine and left ankle and the consultative examiner noted that other than limited range of motion" in some areas, the exam was within normal limits.

The ALJ failed to explain how these findings made Plaintiff less credible when on their face they do not appear to conflict with Plaintiff's testimony. The fact that Plaintiff takes prescription pain medication in order to manage her back pain, ankle pain, and arthritis, supports her testimony of pain. Both Plaintiff's testimony and medical records note that she takes four Vicodin a day, despite the

negative side effects. As to the steroid injections, Plaintiff testified that she did not find them to be help and her medical records note that she obtained no relief after two steroid injections. Plaintiff also discontinued biological infusions, apparently because she did not think they helped and was concerned about infections, although the record indicates that her doctors continued to discuss them. The ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide" and "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("[A]n ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference. . .The claimant's 'good reason' may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects ); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p). In this case, the ALJ did not inquire into Plaintiff's reasons for discontinuing treatment despite drawing inferences about Plaintiff's credibility from her perceived noncompliance with treatment.

The Court is also concerned that in the ALJ's credibility analysis he stated that the record does not indicate Plaintiff used a cane, contradicting his earlier statement that she sometimes used a cane. The ALJ also noted that Plaintiff has not had surgery, but the medical record indicates that the doctors were conducting treatment in a manner intentionally attempting to avoid surgery. Accordingly, much of the ALJ's basis for finding Plaintiff less than credible does not actually conflict

14

with Plaintiff's testimony. The Court is remanding the case for a new RFC and suggests that on remand the ALJ conduct a new credibility analysis that fully considers Plaintiff's testimony and the entirety of the record in compliance with the applicable directives.

## C. Vocational Expert Testimony

Plaintiff argues that the ALJ did not fully incorporate her mental limitations in the RFC for the VE to properly consider. The Commissioner argues the ALJ included the proper limitations in the RFC presented to the VE.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers."). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform, resulting in an incorrect disability determination. *Kasarsky*, 335 F.3d at 543.

Where there are limitations in concentration, persistence, and pace, these limitations must be incorporated into the hypothetical posed to the VE, although there is not "a per se requirement that this specific terminology ('concentration, persistence, and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619. A hypothetical that does not include these terms may still be sufficient if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id*.

15

In this case, the ALJ found that Plaintiff had moderate limitations in concentration, persistence, and pace, when her headaches were considered with her anxiety. Apparently to incorporate these limitations, the ALJ told the VE that Plaintiff required a job "free of production rate pace; with no tandem tasks; and no team work where one step is dependent upon a prior step." AR 64. It is not clear to the Court how Plaintiff's moderate limitations in concentration, persistence and pace, were accounted for by the ALJ's language. *O'Connor-Spinner*, 627 F.3d at 620-21 ("[F]or most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do."). In this case, the jobs provided by the VE include school bus monitor and school crossing guard, jobs in which Plaintiff would presumably need to be able to maintain her concentration on the surrounding environment.

The Court is also concerned with the ALJ's statement that he "determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles [(the "DOT")]," AR 22, since the VE explicitly stated that his testimony conflicted with the job descriptions in the DOT. Specifically, the DOT descriptions include the ability to lift up to twenty pounds but Plaintiff was restricted to lifting up to fifteen pounds. The VE testified that in his experience an individual would be able to obtain certain light work jobs with the fifteen pound limitation, but no further information was provided for the basis of this opinion. The Court notes "[a]t minimum, a vocational expert relying on personal experience, without any citation of objective reports or documents, must provide some specificity concerning the facts, figures, or other data that form the basis of his testimony." *Smith v. Astrue*, No. 09 C 2392, 2010 WL 3526655, at *17 (N.D.

16

Ill. Sept. 1, 2010).

The Court is remanding the case on other grounds, and new VE testimony will presumably need to be obtained based on the updated RFC. The Court reminds the ALJ to include all of Plaintiff's limitations, including her limitations in concentration, persistence, and pace, in his hypothetical to the VE and to inquire into the VE's departure form the DOT and explain his rationale for accepting the deviation.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 18] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 31st day of March, 2015.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record